Dorothea K. Riley Bond Counsel, City of Ottawa 1010 Grand Boulevard, Suite 500 Kansas City, Missouri 64106-2220
Dear Ms. Riley:
As bond counsel for the City of Ottawa, you request our opinion regarding interpretation of the Tax Increment Finance (TIF) Act.[1]
Specifically, you ask whether redevelopment project costs[2] that are payable with proceeds from the sale of bonds issued pursuant to the TIF Act include costs associated with the construction of infrastructure improvements located outside the boundaries of a redevelopment district when such infrastructure is necessary to the redevelopment of the district.
Based on the information you have provided, it is our understanding that the City of Ottawa has formed a tax increment district in an area that was designated as an enterprise zone prior to July 1, 1992, and is considering the adoption of a redevelopment project plan. In order to redevelop the district, infrastructure outside the district boundaries will need to be constructed or improved. The construction or improvements include arterial and intersection improvements for roads that abut the district, extension of a major sewer line from the wastewater plant to the district and upgrades to a water tower and water treatment and distribution plant.
The legislative purpose and an overview of the TIF Act have been discussed in earlier opinions.[3] The legislatively stated purpose for enactment of the TIF Act is to "promote, stimulate and develop the general and economic welfare of the state of Kansas and its communities and to assist in the development and redevelopment of eligible areas within and without a city thereby promoting the general welfare of the citizens of this state. . . ."[4] The redevelopment is pursued by a city through a two-step process, with the first step being establishment of a redevelopment district within an eligible area.[5] Once the redevelopment district has been established, the city's governing body may adopt an ordinance that sets forth the redevelopment district plan.[6] The redevelopment district plan is the preliminary plan that identifies all of the proposed redevelopment project areas and identifies in a general manner all of the buildings, facilities and improvements in each that are proposed to be constructed or improved.[7]
In determining whether the TIF Act authorizes using funds raised through bonds issued under the TIF Act to pay the costs associated with the construction of infrastructure improvements located outside the boundaries of a redevelopment district, we look to the rules of statutory construction.
"The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. . . . [S]tatutes must be construed to give effect, if possible, to the entire act. . . .
"To this end it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."[8]
"When the language of a statute is plain and unambiguous, the court will not speculate about the legislative intent but must give effect to the intent as expressed without determining what the law should or should not be."[9]
The language in the TIF Act clearly indicates that the Legislature contemplated that activities payable from the proceeds of bonds issued pursuant to the TIF Act would occur within the boundaries of a redevelopment district. The Legislature defines "redevelopment district" as "the specific area declared to be an eligible area inwhich the city may develop one or more redevelopment projects."[10] A "redevelopment district plan" is "the preliminary plan that identifies all of the proposed redevelopment project areas and identifies in a general manner all of the buildings, facilities and improvements ineach that are proposed to be constructed or improved in each
redevelopment project area."[11] The ordinance adopted at the conclusion of the public hearing regarding the establishment of a redevelopment district is to "contain a district plan that identifies all of the proposed redevelopment project areas and identifies in a general manner all of the buildings and facilities that are proposed to be constructed or improved in each redevelopment project area."[12]
"One or more redevelopment projects or bioscience development projects may be undertaken by a city within a redevelopment district or bioscience development district after such redevelopment district or bioscience development district has been established. . . ."[13] The resolution in which the city states that it is considering the adoption of a project plan must include a description of "the boundaries of the redevelopment district or bioscience development districtwithin which the redevelopment or bioscience development project will be located. . . ."[14] Similar language appears when addressing the city's authority to remove territory from a redevelopment district or to divide the territory into more than one redevelopment district,[15] to acquire by condemnation any interest in real property the city deems necessary for a project plan,[16] or to provide relocation payments.[17] Based on the scheme established by the Legislature, redevelopment project costs that are payable from bonds issued pursuant to the TIF Act are for projects that are located within the boundaries of a redevelopment district. The Legislature has not authorized the payment of costs associated with the construction of infrastructure improvements located outside the boundaries of a redevelopment district even though such infrastructure may be necessary to the redevelopment of the district. If the Legislature believes such authority should be conferred, it may amend the TIF Act to reflect the authority granted under the Transportation Development District Act[18] which defines "project" in part as "any project or undertaking, whether within or without the district. . . ."[19]
Sincerely,
 Phill Kline Attorney General
 Richard D. Smith Assistant Attorney General
PK:JLM:RDS:jm
[1] K.S.A. 12-1770 et seq.
[2] K.S.A. 2005 Supp. 12-1770a(u).
[3] Attorney General Opinions No. 2006-14; 2005-14; 2004-24; 2004-6;2004-2.
[4] K.S.A. 12-1770.
[5] K.S.A. 2005 Supp. 12-1771.
[6] K.S.A. 2005 Supp. 12-1771(b); 12-1772.
[7] K.S.A. 2003 Supp. 12-1770a(s). See also K.S.A. 2005 Supp.12-1771(b).
[8] Trees Oil Co. v. State Corporation Commission,279 Kan. 209, 228-29 (2005) (internal citations and quotation marks omitted).
[9] Smith v. Yell Bell Taxi, Inc., 276 Kan. 305, 307 (2003).
[10] K.S.A. 2005 Supp. 12-1770a(r) (emphasis added).
[11] K.S.A. 2005 Supp. 12-1770a(s) (emphasis added).
[12] K.S.A. 2005 Supp. 12-1771(b)(1) (emphasis added). Seealso K.S.A. 2005 Supp. 12-1772(a)(5) (a detailed description of the buildings and facilities proposed to be constructed or improvedin such area).
[13] K.S.A. 2005 Supp. 12-1771(c) (emphasis added). See also
K.S.A. 2005 Supp. 12-1772(a).
[14] K.S.A. 2005 Supp. 12-1772(b).
[15] See K.S.A. 2005 Supp. 12-1771(i) (within a redevelopment district).
[16] See K.S.A. 2005 Supp. 12-1773, as amended by L. 2006, Ch.201, § 5 (an area located within the redevelopment district).See also K.S.A. 2005 Supp. 12-1770a(q)(1) (acquisition of property within the redevelopment project area).
[17] See K.S.A. 2005 Supp. 12-1777(a) (to persons, families and businesses who move from real property located in the redevelopment district or who move personal property from real property located in the redevelopment district).
[18] K.S.A. 2005 Supp. 12-17,140 et seq.
[19] K.S.A. 2005 Supp. 12-17,141(k).